**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:23-cv-24461**

RIGHTS HOLDER,

                Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A",

                Defendants.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, RIGHTS HOLDER[1] ("RH" or "Plaintiff"), by and through its undersigned

counsel, brings this Complaint against Defendants, the individuals, partnerships, and

unincorporated associations set forth on Schedule "A" hereto[2] (collectively "Defendants"), who

are promoting, selling, offering for sale and distributing goods bearing or using counterfeits and

confusingly similar imitations of Plaintiff's intellectual property within this district through

various Internet based e-commerce stores using the seller identities as set forth on Schedule "A"

---

[1] Since it is unknown when Plaintiff's forthcoming *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets will be ruled on, Plaintiff's name has been removed to prevent Defendants from getting advanced notice. Counterfeiting and infringement lawsuits like this one are closely monitored by Chinese defendants on websites like www.sellerdefense.cn, http://www.away-sp.com/, social media (QQ, WeChat, etc.), and elsewhere on the internet. The www.sellerdefense.cn website and others warn infringers specifically of product types, brands, law firms filing cases, and other information necessary for defendants, like those named in this case, to evade Plaintiff's anti-pirating and anti-counterfeiting efforts and hide their ill-gotten gains. Plaintiff will file an Amended Complaint which identifies Plaintiff and provides additional information and allegations once the record is unsealed.

[2] Plaintiff will file the Schedule A identifying the Defendants after the Court grants Plaintiff's Motion to Seal Certain Documents Containing Identifying Information About the Defendants.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

hereto (the "Seller IDs"), and in support of its claims, alleges as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law.

2.      Plaintiff brings this action for willful design patent infringement under 35 U.S.C. §271 committed in violation of the Plaintiff's exclusive rights to make, use, offer to sell, or sell Plaintiff's patented design, within the United States or for importation into the United States any patented design during the term of the patent-in-suit, and for all the remedies available under 35 U.S.C. §§ 283, 284, 285, and 289.

## SUBJECT MATTER JURISDICTION

3.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

4.      This Court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121.

5.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

## PERSONAL JURISDICTION

6.      Defendants are subject to personal jurisdiction in this district because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of Florida and this district, through at least the Internet-based e-commerce stores accessible in Florida and operating under their Seller IDs.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

7.      Defendants are subject to personal jurisdiction in this district because their illegal activities directed towards the state of Florida cause Plaintiff injury in Florida, and Plaintiff's claims arise out of those activities.

8.      Alternatively, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

## **VENUE**

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to the court's personal jurisdiction and not resident in the United States and therefore there is no district in which an action may otherwise be brought.

10.      Venue is proper in this court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling and/or shipping infringing products to consumers into this district.

11.      Venue is proper in this Court pursuant to 28 U.S.C. §1400(b) because Defendants or their agents reside in this judicial district or have committed acts of infringement and have a regular and established place of business in this judicial district.

## **THE PLAINTIFF**

12.      RH is a company with its principal place of business in Texas.[3]

---

[3] The details of Plaintiff's company and products have been changed or redacted to prevent Defendants from getting advanced notice. Plaintiff will file under seal an Unredacted Complaint which identifies Plaintiff and will provide the additional information and allegations once the record is unsealed.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

13. RH is a global leader in sneaker XXXXXXX products. RH manufactures and distributes its products designed to fit into any shoe type for XXXXXXXXXX.

14. RH's products are sold through Amazon.com, Walmart.com, Ebay.com, through retail stores such as Hibbett.com and its more than 960 locations across the United States and over 100 around the world, also retailer ShoeShowMega.com with over 2,000 locations, on RH's own website XXXXX.com, and through other authorized retailers.

15. RH owns the trademarks and design patent described below that are the subject of this action.

16. Plaintiff offers for sale and sells its products within the state of Florida, including this district, and throughout the United States.

17. Like many other intellectual property rights owners, Plaintiff suffers ongoing daily and sustained violations of its intellectual property rights at the hands of counterfeiters and infringers, such as Defendants herein.

18. Plaintiff is harmed, the consuming public is duped and confused, and the Defendants earn substantial profits in connection with the infringing conduct.

19. In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, Plaintiff expends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

20. The recent explosion of infringement over the Internet has created an environment that requires companies like Plaintiff to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

infringement of Plaintiff's intellectual property rights, including consumer confusion and the erosion of Plaintiff's brand.

## PLAINTIFF'S INTELLECTUAL PROPERTY RIGHTS

### A.    PLAINTIFF'S TRADEMARK RIGHTS

21.    Plaintiff created and sells its products under the federally registered trademarks ANONYMOUS MARK 1 (Stylized/Design) and ANONYMOUS MARK 2 (Standard Character), made from a durable and flexible material with a breathable and adjustable design able to fit into any shoe type for XXXXXXX.[4]

22.    Plaintiff is the owner of all rights in and to ANONYMOUS MARK 1, U.S. Reg. No. XXXXXXX for goods in International Classes 005, 010, 021, and 025, registered on XXXXX, 2015 and shown in Exhibit 1,[5] which is valid and registered on the Principal Register of the United States Patent and Trademark Office ("MARK 1").

23.    MARK 1 is a stylized/design mark consisting of the wording XXXXX and the design elements comprising a XXXXXXXXX. MARK 1 was first used and first used in commerce on  February 20, 2010. MARK 1 is incontestable.

24.    Plaintiff is the owner of all rights in and to ANONYMOUS MARK 2 (Standard Character) Mark, U.S. Reg. No. XXXXXXX for goods in International Class 021 registered on XXXXXX, 2020, and shown in Exhibit 2,[6] which is valid and registered on the Principal Register of the United States Patent and Trademark Office ("MARK 2").

---

[4] The details of Plaintiff's trademarks have been redacted or omitted to prevent Defendants from getting advanced notice. Plaintiff will file under seal an Unredacted Complaint which will reveal the information once the record is unsealed.
[5] Omitted in initial filing. Plaintiff will attach Exhibit 1 to the Amended Complaint.
[6] Omitted in initial filing. Plaintiff will attach Exhibit 1 to the Amended Complaint.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

25.     MARK 2 consists of the word XXXXX in standard characters without claim to any particular font style, size, or color. MARK 2 was first used and first used in commerce on May 15, 2020.

26.     MARK 1 and MARK 2 (collectively, the "RH MARKS") are used in connection with the manufacture and distribution of Plaintiff's high-quality goods. Shown below are the RH MARKS as used on the packaging for Plaintiff's products.

**[OMITTED]**

27.     The RH MARKS have been used in interstate commerce to identify and distinguish Plaintiff's high-quality goods for an extended period of time.

28.     The RH MARKS have been used by Plaintiff long prior in time to Defendants' use of copies of those trademarks.

29.     The RH MARKS have never been assigned or licensed to any of the Defendants.

30.     The RH MARKS are symbols of Plaintiff's quality goods, reputation and goodwill and have never been abandoned.

31.     Plaintiff has carefully monitored and policed the use of The RH MARKS.

32.     Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the RH MARKS.

33.     Plaintiff has extensively used, advertised, and promoted the RH MARKS in the United States in association with the sale of high-quality goods.

34.     Plaintiff has spent substantial resources promoting the RH MARKS and products bearing both Marks.

35.     In recent years, sales of products bearing the RH MARKS have exceeded a million dollars within the United States.

36.     As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the RH MARKS as being high-quality goods sponsored and approved by Plaintiff.

37.     Accordingly, the RH MARKS have achieved secondary meaning as identifiers of high-quality goods.

38.     Genuine goods bearing the RH MARKS are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet.

39.     Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing have become increasingly important to Plaintiff's overall marketing and consumer education efforts.

40.     Thus, Plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

41.     Plaintiff's SEO strategies allow Plaintiff and its authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's products and the goods marked with the RH MARKS.

## B.     PLAINTIFF'S PATENT RIGHTS

42.     Plaintiff's shoe products' design features are protected under a design patent and registered with the United Stated Patent and Trademark Office under U.S. Patent No. XXXXXX titled XXXXXXX.[7] A true and correct copy of U.S. Design Patent Registration is attached hereto as Exhibit 3[8] (the "RH Design Patent").

---

[7] The details of Plaintiff's design patent have been redacted or omitted to prevent Defendants from getting advanced notice. Plaintiff will file under seal an Unredacted Complaint which will reveal the information once the record is unsealed.
[8] Omitted in initial filing. Plaintiff will attach Exhibit 1 to the Unredacted Complaint.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

43.     The RH Design Patent relates to the ornamental design for XXXXX as shown and described through seven figures corresponding and ordering in perspective, right side, left side, front, back, top, and bottom views.

44.     The RH Design Patent was registered on XXXXXX, 2022, has not expired, and is valid.

45.     RH displays the words "Patent Pending" as well as its company website address on the product packaging as part of the products' description and information. RH further prominently displays the words "PATENT PENDING" on its genuine product.

46.     The RH website contains a Patent Notice with the registered patents in the U.S. and Canada and references other patents pending worldwide.

47.     Plaintiff has never granted authorization to anyone to import, make, use, or sell unauthorized goods using the RH Design Patent.

## DEFENDANTS

48.     Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

49.     Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations.

50.     Defendants are engaged in business in Florida but have not appointed an agent for service of process.

51.     Upon information and belief, Defendants have registered, established or purchased, and maintained their Seller IDs.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

52.     Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of commercial Internet based e-commerce stores via the Internet marketplace websites under the Seller IDs.

53.     Defendants are the past and present controlling forces behind the sale of products bearing counterfeits and infringements of Plaintiff's intellectual property rights as described herein operating and using at least the Seller IDs.

54.     Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale, and selling goods bearing counterfeits and infringements of Plaintiff's intellectual property rights to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller IDs and additional names, websites, or seller identification aliases not yet known to Plaintiff.

55.     Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

56.     Upon information and belief, Defendants have engaged in fraudulent conduct with respect to the registration of the Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms or domain registrar where they offer to sell and/or sell during the registration or maintenance process related to their respective Seller IDs.

57.     Upon information and belief, many Defendants registered and maintained their Seller IDs for the sole purpose of engaging in illegal counterfeiting activities.

58.     Upon information and belief, Defendants will likely continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale

counterfeits and infringements of Plaintiff's intellectual property rights unless preliminarily and permanently enjoined.

59.     Defendants use their Internet-based businesses to infringe the intellectual property rights of Plaintiff and others.

60.     Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of counterfeits and infringements of Plaintiff's intellectual property rights are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff.

61.     Some of the Defendants use individual seller store names containing the RH Marks and the RH Design Patent, and these store names are indexed on search engines and compete directly with Plaintiff for space in search results.

62.     The appearance of Defendants' individual seller stores in search engine results undermines Plaintiff's efforts to educate consumers about the value of products sold under the RH Marks and the RH Design Patent.

63.     Defendants are using counterfeits and infringements of Plaintiff's intellectual property rights to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

64.     Defendants, through the sale and offer to sell counterfeit and infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Florida and causing Plaintiff harm and damage within this jurisdiction.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

65.     The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiffs' intellectual property rights and the destruction of the legitimate market sector in which it operates.

66.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

## **JOINDER OF DEFENDANTS IN THIS ACTION IS PROPER**

67.     Defendants are the individuals, partnerships, and unincorporated associations set forth on Schedule "A" hereto.

68.     Defendants are promoting, selling, offering for sale and distributing goods bearing identical or confusingly similar imitations of Plaintiff's intellectual property within this district.

69.     Joinder of all Defendants is permissible based on the permissive party joinder rule of Fed. R. Civ. P. 20(a)(2) that permits the joinder of persons in an action as Defendants where any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all Defendants will arise in the action.

70.     Joinder of the multiple Defendants listed in Schedule "A" attached hereto is permitted because Plaintiff asserts rights to relief against these Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and common questions of law or fact will arise in the action.

71.     Joinder of the multiple Defendants listed in Schedule "A" attached hereto serves the interests of convenience and judicial economy, which will lead to a just, speedy, and inexpensive resolution for Plaintiffs, Defendants, and this Court.

72.     Joinder of the multiple Defendants listed in Schedule "A" attached hereto will not create any unnecessary delay nor will it prejudice any party. On the other hand, severance is likely to cause delays and prejudice Plaintiff and Defendants alike.

73.     Joinder of the multiple Defendants listed in Schedule "A" is procedural only and does not affect the substantive rights of any defendant listed on Schedule "A" hereto.

74.     This Court has jurisdiction over the multiple Defendants listed in Schedule "A" hereto. Venue is proper in this court for this dispute involving the multiple Defendants listed in Schedule "A" hereto.

75.     Plaintiff's claim against the multiple Defendants listed in Schedule "A" are all transactionally related.

76.     Plaintiff is claiming counterfeiting, infringement, and piracy of Plaintiff's licensed intellectual property rights by Defendants.

77.     The actions of all Defendants cause indivisible harm to Plaintiff by Defendants' combined actions engaging in similar counterfeiting and infringing conduct when each is compared to the others.

78.     All Defendants' actions are logically related. All Defendants are all engaging in the same systematic approach of establishing online storefronts to redistribute illegal products from the same or similar sources while maintaining financial accounts that the Defendants can easily conceal to avoid any real liability for their actions.

79.     All Defendants undertake efforts to conceal their true identities from Plaintiff in order to avoid detection for their illegal activities.

80.     All Defendants are located in foreign jurisdictions, mostly China.

81.     All Defendants undertake efforts to conceal their true identities from Plaintiff in

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

order to avoid detection for their illegal counterfeiting and infringing activities.

82.     All Defendants have the same or closely related sources for their counterfeit and infringing products with some sourcing from the same upstream source and others sourcing from downstream sources who obtain counterfeit and infringing products from the same upstream sources.

83.     All Defendants take advantage of a set of circumstances the anonymity and mass reach the internet affords to sell counterfeit and infringing goods across international borders and violate Plaintiff's licensed intellectual property rights with impunity.

84.     All Defendants have registered their Seller IDs with a small number of online platforms for the purpose of engaging in counterfeiting and infringement.

85.     All Defendants use payment and financial accounts associated with their online storefronts or the online platforms where their online storefronts reside.

86.     All Defendants use their payment and financial accounts to accept, receive, and deposit profits from their illegal activities.

87.     All Defendants can easily and quickly transfer or conceal their funds in their use payment and financial accounts to avoid detection and liability in the event their efforts are discovered or Plaintiff obtains a monetary award.

88.     All Defendants violated one or more of the Plaintiff's licensed intellectual property rights in the United States, by the use of common or identical methods.

89.     All Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they may not all engage in direct communication or coordination.

90.     Many of the Defendants are operating multiple internet storefronts and online marketplace seller accounts using different Seller IDs listed on Schedule "A". As a result, there are more Seller IDs than there are Defendants, a fact that will emerge in discovery.

91.     Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of infringements of Plaintiff's intellectual property rights are essential components of Defendants' online activities and are one of the means by which Defendants further their infringement scheme and cause harm to Plaintiff.

92.     Defendants are using infringements of Plaintiff's intellectual property rights to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

93.     Defendants, through the sale and offer to sell infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Florida and causing Plaintiff harm and damage within this jurisdiction.

94.     The natural and intended byproduct of Defendants' logically related actions is the erosion and destruction of the goodwill associated with Plaintiffs' licensed intellectual property rights and the destruction of the legitimate market sector in which it operates.

95.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

## DEFENDANTS' COUNTERFEITING AND INFRINGING ACTIVITIES

96.     Defendants are promoting, advertising, distributing, selling, and/or offering for sale cheap copies of Plaintiff's products in interstate commerce that are counterfeits and

infringements of Plaintiff's intellectual property rights (the "Counterfeit Goods") through at least the Internet based e-commerce stores operating under the Seller IDs.

97.     Specifically, Defendants are using the RH Marks to initially attract online customers and drive them to Defendants' e-commerce stores operating under the Seller IDs.

98.     Defendants are using identical or similar marks to the RH Marks for different quality goods.

99.     Plaintiff has used the RH Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's merchandise.

100.    Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiff's genuine goods. Most of the Counterfeit Goods are made from cheap recycled plastics that can break very easily and some of them have spikes on the tops known to rip out the inside material of the toe-box when taken out of shoes.

101.    Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Plaintiff, despite Defendants' knowledge that they are without authority to use the RH Marks and the RH Design Patent.

102.    The net effect of Defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale on Defendants' e-commerce stores are genuine goods originating from, associated with, and approved by Plaintiff.

103.    Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores on, at least, one Internet marketplace website operating under, at least, the Seller IDs.

104.    In so advertising their stores and products, Defendants improperly and unlawfully use the RH Marks without Plaintiff's permission.

105.    As part of their overall infringement and counterfeiting scheme, most Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the RH Marks.

106.    Specifically, Defendants are using counterfeits and infringements of the RH Marks in order to make their e-commerce stores selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiff's goods and goods sold by Plaintiff's competitors online.

107.    By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods.

108.    Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the RH Marks, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers via the Internet.

109.    Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.

110.    As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

111.    Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the RH Marks and the RH Design Patent, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

112.    Defendants' use of the RH Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

113.    Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.

114.    If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

115.    Defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

116.    Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

117.    Defendants' payment and financial accounts connected to their marketplace seller accounts, including but not limited to those specifically set forth on Schedule "A", are being used by Defendants to accept, receive, and deposit profits from Defendants' counterfeiting, infringing, and unfairly competitive activities connected to their Seller IDs and any other alias e-commerce stores, or seller identification names being used and/or controlled by them.

118.    Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiff.

119.    Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and infringing activities and their wrongful use of Plaintiff's intellectual property rights.

120.    If Defendants' counterfeiting, infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

121.     The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

122.    Defendants have sold their infringing products in competition directly with Plaintiff's genuine products.

123.    Plaintiff should not have any competition from Defendants because Plaintiff never authorized Defendants to use Plaintiff's trademarks.

124.    Plaintiff has no adequate remedy at law.

## COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

125.    Plaintiff incorporates the allegations of paragraphs 1 through 124 of this Complaint as if fully set forth herein.

126.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the RH Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

127.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of the RH Marks.

128.     Defendants are continuously infringing and inducing others to infringe the RH Marks by using them to advertise, promote, sell, and offer to sell counterfeit and infringing goods.

129.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

130.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

131.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the RH Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

132.     Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

133.     If not preliminarily and permanently enjoined, Defendants will continue to wrongfully profit from their illegal activities.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## COUNT II – FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

134.    Plaintiff incorporates the allegations of paragraphs 1 through 124 of this Complaint as if fully set forth herein.

135.    Upon information and belief, Defendants' Counterfeit Goods bearing, offered for sale and sold using copies of at least one of the RH Marks have been widely advertised and offered for sale throughout the United States via at least one Internet marketplace website.

136.    Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of at least one of the RH Marks are virtually identical in appearance to Plaintiff's genuine goods.

137.    Defendants' Counterfeit Goods are different in quality from Plaintiff's goods and are of much lower quality.

138.    Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

139.    Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

140.    Defendants have authorized infringing uses of the RH Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.

141.    Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

142.    Defendants are using counterfeits and infringements of the RH Marks in order to unfairly compete with Plaintiff and others for space within organic search engine results and

social media results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the Internet and across social media platforms.

143.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

144.     Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct.

145.     Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## <u>COUNT III – COMMON LAW UNFAIR COMPETITON</u>

146.     Plaintiff incorporates the allegations of paragraphs 1 through 124 of this Complaint as if fully set forth herein.

147.     This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale of goods bearing marks that are virtually identical to the RH Marks in violation of Florida's common law of unfair competition.

148.     Defendants' activities complained of herein constitute unfair methods of competition.

149.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods using or bearing counterfeits and infringements of the RH Marks.

150.     Defendants are also using counterfeits and infringements of the RH Marks to unfairly compete with Plaintiff and others for (1) space in search engine and social media results across an array of search terms and (2) visibility on the Internet.

**SRIPLAW**
<small>CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK</small>

151.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein by their use of the RH Marks.

152.     Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT

153.     Plaintiff incorporates the allegations of paragraphs 1 through 124 of this Complaint as if fully set forth herein.

154.      This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing at least one or more of the RH Marks.

155.     Plaintiff is the owner of all common law rights in and to the RH Marks.

156.     Defendants, upon information and belief, are promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of the RH Marks.

157.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing the RH Marks.

158.     Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

## COUNT V – PATENT INFRINGEMENT

159.     Plaintiff incorporates the allegations of paragraphs 1 through 124 of this Complaint as if fully set forth herein.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

160.    Plaintiff has the exclusive rights on Design Patent U.S. XXXXXX, claiming the design features of its XXXXX product.

161.    Defendants have infringed and continue to infringe the RH Design Patent either directly or indirectly through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271, by making, using, selling, importing and/or offering to sell infringing products, namely the infringing and counterfeit products sold under identical or similar marks to the RH Marks.

162.    Defendants' infringing and counterfeit products sold under the RH Marks are the same in all material respects.

163.    Defendants' infringement, contributory infringement and/or inducement to infringe has injured Plaintiff and it, therefore, is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty.

164.    Defendants' infringement, contributory infringement and/or inducement to infringe has been willful and deliberate because Defendants have notice of or knew of the RH Design Patent and have nonetheless injured and will continue to injure Plaintiff, unless and until this Court enters an injunction, which prohibits further infringement and specifically enjoins further manufacture, use, sale, importation and/or offer for sale of products that come within the scope of the RH Design Patent.

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against defendants as follows:

        a.   Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the RH Marks; from using the RH Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff , through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the RH Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's name or trademarks and from otherwise unfairly competing with Plaintiff.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

b.  Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of the injunction issued by this Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and infringements of the RH Marks.

c.  Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by this Court disable and/or cease facilitating access to the Seller IDs and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the RH Marks.

d.  Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiff's request, any messaging service and Internet marketplace website operators, administrators, registrar and/or top level domain (TLD) Registry for the Seller IDs who are provided with notice of an injunction issued by this Court identify any e-mail address known to be associated with Defendants' respective Seller IDs.

e.   Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and
this Court's inherent authority that upon Plaintiff's request, any Internet
marketplace website operators and/or administrators who are provided
with notice of an injunction issued by this Court permanently remove from
the multiple platforms, which include, *inter alia*, a direct platform, group
platform, seller product management platform, vendor product
management platform, and brand registry platform, any and all listings and
associated images of goods bearing counterfeits and/or infringements of
the RH Marks via the e-commerce stores operating under the Seller IDs,
including but not limited to the listings and associated images identified
by the "parent" and/or "child" Amazon Standard Identification Numbers
("ASIN") on Schedule "A" annexed hereto, and upon Plaintiff's request,
any other listings and images of goods bearing counterfeits and/or
infringements of the RH Marks associated with any ASIN linked to the
same sellers or linked to any other alias seller identification names being
used and/or controlled by Defendants to promote, offer for sale and/or sell
goods bearing and/or using counterfeits and/or infringements of the RH
Marks.

f.   Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and
this Court's inherent authority that, upon Plaintiff's request, Defendants
and any Internet marketplace website operators and/or administrators who
are provided with notice of an injunction issued by this Court immediately
cease fulfillment of and sequester all goods of each Defendant bearing the

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

RH Marks in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

g.  Entry of an Order requiring Defendants to correct any erroneous impression the consuming public may have derived concerning the nature, characteristics, or qualities of their products, including without limitation, the placement of corrective advertising and providing written notice to the public.

h.  Entry of an Order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C.§ 1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

i.  Entry of an Order requiring Defendant to account to and pay Plaintiff damages for patent infringement in an amount to be determined by the Court pursuant to 35 U.S.C. § 284 which shall in no event be less than a reasonable royalty.

j.  Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees, associated with bringing this action, including the cost of corrective advertising.

k.   Entry of an Order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs, or other alias seller identification or e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s) and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

l.   Entry of an award of pre-judgment interest on the judgment amount.

m.   Entry of an Order for any further relief as the Court may deem just and proper.

DATED: November 22, 2023             Respectfully submitted,

*/s/ Angela M. Nieves*
ANGELA M. NIEVES
Florida Bar Number: 1032760
angela.nieves@sriplaw.com
JOEL B. ROTHMAN
Florida Bar Number:  98220
joel.rothman@sriplaw.com

**SRIPLAW, P.A.**
21301 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff RIGHTS HOLDER*

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK