**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:23-cv-24461-PCH-EGT**

| | |
|---|---|
| WEARABLE SHOE TREE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> Defendants. | |

**ORDER GRANTING *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER**

This matter is before the Court on plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (ECF No. 10), filed under 15 U.S.C. § 1116, 35 U.S.C. §§281 and 283, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a), by Plaintiff, WEARABLE SHOE TREE, LLC ("WST" or "Plaintiff").

Plaintiff asks the Court to enter a Temporary Restraining Order and an order restraining the financial accounts used by Defendants. As discussed below, Plaintiff has satisfied the requirements for issuance of a Temporary Restraining Order.

**BACKGROUND**

The following factual background is taken from Plaintiff's Complaint (ECF No. 1), the Application, and supporting evidentiary submissions and exhibits.

WST is the owner of all rights in and to the S SNEAKER SHIELDS (Stylized/Design) Mark, U.S. Reg. No. 4,686,931 for protective, antimicrobial and deodorant shoe products, namely shoe deodorizers (in International Class 5), orthopedic shoe inserts, namely, customizable shoe inserts to suit wearer morphology (in International Class 10), shoe trees (in International Class 21), and shoe accessories, namely shoe inserts for primarily non-orthopedic purposes (in International Class 25) and shown in Exhibit 1 to the Complaint in this action, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "S SNEAKER SHIELDS Mark"). (Siragusa Decl. ¶ 15 filed at ECF No. 10-1).

WST is the owner of all rights in and to the SHIELDS (Standard Character) Mark, U.S. Reg. No. 6,220,820 for shoe trees in International Class 21 and shown in Exhibit 2 to the Complaint, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "SHIELDS Mark"). (Siragusa Decl. ¶¶ 17, 42, 43).

Plaintiff created and sells shoe tree products made from a durable and flexible material with a breathable and adjustable design able to fit into any shoe type for preventing and protecting it from creases under the S SNEAKER SHIELDS and SHIELDS Marks. (Siragusa Decl. ¶ 19). The S SNEAKER SHIELDS and SHIELDS Marks are used in connection with the manufacture and distribution of Plaintiff's high-quality patented goods. (Siragusa Decl. ¶ 20).

Plaintiff's shoe tree products' design features are protected under a design patent and registered with the United Stated Patent and Trademark Office under U.S. Patent No. D790,203 S titled "WEARABLE SHOE TREE". A true and correct copy of U.S. Design Patent Registration is attached hereto as Exhibit 3 to the Complaint (the "SHOE TREE Design Patent"). The SHOE TREE Design Patent relates to the ornamental design for a wearable shoe tree as shown and described through seven figures corresponding and ordering in perspective, right side, left side,

front, back, top, and bottom views. The SHOE TREE Design Patent was registered on November 22, 2022, has not expired, and is valid. (Siragusa Decl. ¶¶ 42-44).

Plaintiff alleges that Defendants, through e-commerce stores operating via Internet marketplace platforms under their seller identification names identified on Schedule "A" to the Complaint in this action (the "Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing and using what Plaintiff has determined to be counterfeits, infringements, reproductions and/or colorable imitations of the S SNEAKER SHIELDS and SHIELDS Marks, and the SHOE TREE Design Patent, and reproducing the main design features claimed under the SHOE TREE Design Patent (Siragusa Decl. ¶¶ 48, 51-56; Rothman Decl. ¶¶ 11, 12 filed at ECF No. 10-11).

Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the S SNEAKER SHIELDS and SHIELDS Marks, and the SHOE TREE Design Patent (Siragusa Decl. ¶¶ 47, 68, 76).

Plaintiff investigated the promotion and sale of counterfeit and infringing versions of Plaintiff's products by Defendants and to obtain the available payment account data for receipt of funds paid to Defendants for the sale of counterfeit versions of Plaintiff's merchandise through the Seller IDs. (Siragusa Decl. ¶¶ 49, 50; Rothman Decl. ¶ 10).

Plaintiff or someone under its supervision accessed the e-commerce stores operating under Defendants' Seller IDs. Plaintiff created detailed web page captures and images of the products using S SNEAKER SHIELDS and SHIELDS Marks, and the SHOE TREE Design Patent. (Siragusa Decl. ¶¶ 53, 55, 56; Rothman Decl. ¶¶ 11, 12). Test purchases were placed for certain products – all bearing counterfeits and infringements of the S SNEAKER SHIELDS and SHIELDS

3

Marks, and the SHOE TREE Design Patent at issue in this action – and requested that each product be shipped to addresses in the United States. (Siragusa Decl. ¶¶ 79, 80).

Plaintiff or someone under its supervision reviewed and visually inspected the products and determined the products were non-genuine, unauthorized versions of Plaintiff's products. (Siragusa Decl. ¶ 80).

On August 28, 2023, Plaintiff filed its Complaint (ECF No. 1) against Defendants for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, common law trademark infringement, and willful design patent infringement.

On September 1, 2023, Plaintiff filed its *Ex Parte* Application for Entry of a Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (ECF No. 10).

## LEGAL STANDARD

To obtain a Temporary Restraining Order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo,* 403 F.3d 1223, 1225–26 (11th Cir. 2005).

Additionally, Fed. R. Civ. P. Rule 65 provides that:

The court may issue a temporary restraining order without written or oral notice to the adverse party of its attorney on if:

(A)   specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B)   the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

4

Fed. R. Civ. P. 65(b)(1).

*Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the *status quo* and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

## DISCUSSION

Based on declarations submitted in support of Plaintiff's Motion, the Court concludes that Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing or using counterfeits, infringements, reproductions, or colorable imitations of the S SNEAKER SHIELDS and SHIELDS Marks, and the SHOE TREE Design Patent, that the products Defendants are selling and promoting for sale are knockoffs of Plaintiff's products that bear or use similar or identical marks to one of more of S SNEAKER SHIELDS and SHIELDS Marks, and reproduce the main design features claimed under the SHOE TREE Design Patent, and that the infringements of these intellectual property will likely cause Plaintiff to suffer immediate and irreparable injury if a preliminary injunction is not granted.

The following specific facts, as set forth in Plaintiff's Complaint, the Motion, and accompanying Declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers before Defendants can be heard in opposition unless Plaintiff's request for *ex parte* relief is granted: a) Defendants own or control e-commerce stores via Internet marketplace platforms operating under their Seller IDs which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of Plaintiff's rights; b) there is good cause to believe that more counterfeit and infringing products bearing or

using Plaintiff's trademarks and design patent will appear in the marketplace, that consumers are likely to be misled, confused, or disappointed by the quality of these products, and that Plaintiff may suffer loss of sales for its genuine products; and c) there is good cause to believe that if Plaintiff proceeds to put Defendants on notice of this Application, Defendants can easily and quickly transfer or modify e-commerce store registration data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs, thereby thwarting Plaintiff's ability to obtain meaningful relief.

The potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a Temporary Restraining Order is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products, if such relief is not issued. The public interest favors issuance of the Temporary Restraining Order to protect Plaintiff's trademarks and design patent interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods. Further, under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing counterfeits and infringements of Plaintiff's trademarks. See *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). Under the Patent Act Plaintiff may be entitled to a compensation for the infringement, no less that a reasonable royalty for the use made of the invention by the Defendants, together with the interest and cost fixed by the Court. (See 35 U.S.C. § 284). Also, Plaintiff may be entitled to the extent of the total profit obtained by the Defendants for applying its registered design patent or any colorable imitation thereof, to Defendant's products for purpose of sale or expose for sale. (See 35 U.S.C. § 289).

In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark and patent laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Accordingly, the Court, having considered the Motion, and having found good cause, it is **ORDERED** that the motion is **GRANTED,** and a Temporary Restraining Order is entered as follows:

## TEMPORARY RESTRAINING ORDER

1. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby restrained and enjoined until further Order of this Court:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the S SNEAKER SHIELDS and SHIELDS Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing and/or using the S SNEAKER SHIELDS and SHIELDS Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the S SNEAKER SHIELDS and SHIELDS Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual

or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant;

c. From making, using, selling, importing and/or offering to sell products that practice the SHOE TREE Design Patent.

2. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the S SNEAKER SHIELDS and SHIELDS Marks, and the SHOE TREE Design Patent on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs. This order is limited to the Defendants' listings using the S SNEAKER SHIELDS and SHIELDS Marks, and the SHOE TREE Design Patent on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs, and does not apply to the Defendants' entire e-commerce stores.

3. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the S SNEAKER SHIELDS and SHIELDS Marks, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet based e-commerce

stores registered, owned, or operated by any Defendant, including the Internet based e-commerce stores operating under the Seller IDs.

4. Each Defendant shall not transfer ownership of the Seller IDs during the pendency of this action, or until further order of the Court.

5. Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Seller IDs that may have been deleted before the entry of this Order.

6. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform ("AliExpress"), Zhejiang Ant Small and Micro Financial Services Group Co., Ltd. ("Ant Financial Services"), AliPay (China) Internet Technology Co. Ltd., Alipay.com Co., Ltd., and Alipay Singapore E-Commerce Private Limited (collectively, "Alipay"), Amazon Payments, Inc. ("Amazon"), Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, ContextLogic, Inc., which operates the Wish.com website ("ContextLogic"), PayPal, Inc. ("PayPal"), eBay, Inc. ("eBay"), Payoneer, Inc. ("Payoneer"), Joom, SIA (Latvia) ("Joom"), Walmart.com ("Walmart"), and their related companies and affiliates shall, to the extent not already done, (i) immediately identify all financial accounts and/or sub-accounts, associated with the Internet based e-commerce stores operating under the Seller IDs, store numbers, infringing product numbers, and/or the e-mail addresses identified on Schedule "A" to the Complaint, as well as any other accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or

received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court.

7. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, AliExpress, Ant Financial Services, Alipay, Amazon, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Payoneer, Joom, Walmart, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiff's counsel with all data that details: (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to; (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained; (iii) the historical sales for the Defendants' listings that are alleged to infringe Plaintiff's trademarks, copyrights and patent; and (iv) the true identities along with complete contact information including email addresses of all Defendants.

8. No funds restrained by this Order shall be transferred or surrendered by any Defendant, financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, AliExpress, Ant Financial Services, Alipay, Amazon, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Payoneer, Joom, Walmart, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

9. No Defendant whose funds are restrained by this Order may transfer said funds in possession of any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, AliExpress, Ant Financial Services, Alipay, Amazon, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Payoneer, Joom, Walmart, and their related companies and affiliates restrained by this Order to any other financial institution, payment processor, bank, escrow service, money transmitter or marketplace website without the express authorization of this Court.

10. Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order.

11. This Order shall apply to the Seller IDs, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting the S SNEAKER SHIELDS and SHIELDS Marks and/or unfairly competing with Plaintiff and/or infringing the Plaintiff's SHOE TREE Design Patent.

12. This Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated by the parties.

**BOND TO BE POSTED**

13. Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint,

during the pendency of this action, or until further Order of the Court, and in the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

## PRELIMINARY INJUNCTION

14. A telephonic hearing is set before this Court on **December 15, 2023, at 12:00 p.m.**, at which time Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction.

15. For this hearing, Counsel are instructed to take the following steps shortly before the scheduled hearing time so that the telephonic hearing may begin promptly: Call the Toll-Free Number: 1-888-684-8852. Enter the access code, 4825076, followed by the # sign. Enter the security code, 332010468, followed by the # sign. State his or her name and enter the conference.

16. After Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, Plaintiff shall serve copies of the Complaint, the Application, and this Order, on each defendant by e-mail and/or online contact form or other means of electronic contact provided on the e-commerce stores operating under the Seller IDs, or by providing a copy of this Order by e-mail to the marketplace platform for each of the Seller IDs so that the marketplace platform, in turn, notifies each Defendant of the Order, or by other means reasonably calculated to give notice which is permitted by the Court.

17. Plaintiff shall post copies of the Complaint, the Application, this Order, as well as all other documents filed in this action on the website located at www.sriplaw.com/notice and shall provide the address to the website to the Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof.

18. Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants by regularly updating the website located at www.sriplaw.com/notice, or by other means reasonably calculated to give notice which is permitted by the Court.

19. Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the Internet marketplace websites and/or financial institutions, payment processors, banks, escrow services, money transmitters, and marketplace platforms, including but not limited to AliExpress, Alipay, Amazon.com, Inc., Dunhuang Group which operates the DHgate.com and DHpay.com platforms, ContextLogic, Walmart, and their related companies and affiliates shall, at Plaintiff's request, provide Plaintiff's counsel with any e-mail address known to be associated with Defendants' respective Seller IDs.

20. Defendants shall have seven (7) business days to comply with this Temporary Restraining Order following notice.

21. Any response or opposition to Plaintiff's Motion for Preliminary Injunction must be filed and served on Plaintiff's counsel by **12:00 p.m. on December 11, 2023**.

22. Plaintiff shall file any reply memorandum on or before **12:00 p.m. on December 13, 2023**.

23. The above dates may be revised upon stipulation by all parties and approval of this Court.

24. Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d), 35 U.S.C.

§ 283, Federal Rule of Civil Procedure 65, The All Writs Act, 28 U.S.C. § 1651(a), and this Court's inherent authority.

**DONE AND ORDERED** in Miami, Florida, on December 1, 2023.

Paul C. Huck
United States District Judge