UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-24461

RIGHTS HOLDER.,

      Plaintiff,
v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

      Defendants.
_____/

**Defendant's Response in Opposition to**
**Plaintiff's Motion for Preliminary Injunction and Order Restraining Transfer of Assets**

The Defendants listed in the attached Schedule A (collectively, the "Defendants")[1], by and through undersigned counsel, hereby respond in opposition to Plaintiff's Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets [D.E. 10][2], and in support thereof argues as follows:

**I.    Procedural Background**

On November 22, 2023, Plaintiff[3] filed its Complaint against, *inter alia*, Defendants, alleging (i) trademark infringement (15 U.S.C. § 1114), (ii) false designation of origin (15 U.S.C. § 1125(a)), (iii) common law unfair competition, (iv) common law trademark infringement, and

---

[1] The Defendants are properly classified in three distinct groups ("Group 1 Defendants," Group 2 Defendants," and "Group 3 Defendants," as shown in Schedule A). Unless otherwise stated, the Defendants are independent entities, with its own independent defenses against the claims alleged by Plaintiff. Notwithstanding, Defendants provide this response as a whole for the purpose of opposing Plaintiff's Motion for Preliminary Injunction.

[2] Sealed Motion.

[3] Plaintiff's identity is currently being withheld under seal/anonymous. As such, Defendants are not aware of the identity of its accuser.

(v) patent infringement against, based upon Defendant's alleged unauthorized use of certain trademark(s) and patent(s) held by Plaintiff[4]. On November 30, Plaintiff filed its *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("Motion for Preliminary Injunction") [D.E. 10]. On December 1, 2023, the Court entered its Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order [D.E. 13], setting a hearing on Plaintiff's Motion for Preliminary Injunction for December 15, 2023, which was later reset to December 29, 2023 [D.E. 22]. On December 12, 2023, Plaintiff moved to continue the hearing on its Motion for Preliminary Injunction and extend temporary restraining order for fourteen days ("Motion to Extend TRO") [ECF No. 17]. Per the Court's Order [D.E. 22], the temporary restraining order entered by the Court was extended and is currently set to expire on December 29, 2023.

For the reasons explained in further detail below, Plaintiff is entitled to no further relief under Plaintiff's Motion for Preliminary Injunction, as Plaintiff is unlikely to succeed on the merits of its claims raised in its Complaint. As a result, any request for preliminary injunction and/or asset restraint must be denied.

## II. Argument

### a. Legal Standard

An injunction is an extraordinary and drastic remedy not to be granted unless the movant has clearly established the burden of persuasion as to the prerequisites. *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir.2000). To obtain injunctive relief, a movant must satisfy four requirements: (1) "a substantial likelihood of success on the merits," (2) "that the preliminary injunction is

---

[4] As the Motion for Preliminary Injunction was filed under seal and Plaintiff's Complaint redacts all pertinent information regarding what rights are and/or were allegedly infringed, Defendants are unaware of the exact intellectual property rights claimed by Plaintiff. As such, this response is filed upon information and belief pertaining to the certain intellectual property rights being claimed by Plaintiff.

necessary to prevent irreparable injury," (3) "that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant," and (4) "that the preliminary injunction would not be averse to the public interest." Chavez v. Fla. SP Warden, 742 F.3d 1267, 1271 (11th Cir. 2014).

Generally, the first element is the most important because granting a temporary restraining order or motion for preliminary injunction would be inequitable if the movant has no chance of success on the merits. Martinetti v. Tucker, 2012 WL 13071123 at *1 (S.D. Fla. May 8, 2012); *see also* Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed.Cir.2001) (stating a moving party is not entitled to a preliminary injunction unless it establishes both the likelihood of success on the merits and irreparable harm absent a preliminary injunction).

  **b. Preliminary Injunction is improper at this time because Plaintiff has failed to provide notice of the claims alleged against Defendants**

Again, it must be stated that Defendants are entirely unaware as to the exact intellectual property rights Plaintiff claims have been infringed by Defendants. As such, Defendants have not been provided proper notice of the claims raised against them for the purpose of sufficiently responding to Plaintiff's Motion for Preliminary Injunction. *See* Traffic Tech Inc. v. Evolution Logistics Corp., 2018 WL 11487392, at *1 (S.D. Fla. Oct. 10, 2018) ("While a temporary restraining order may be issued without notice to the adverse party, a preliminary injunction is issued only after the adverse party has received notice of the requested relief.").

In its Motion to Extend TRO, Plaintiff asserted that its inability to serve any of the Defendants was the basis of its need to extend the TRO and reset the hearing on Plaintiff's Motion for Preliminary Injunction. *See* [D.E. 17, ¶ 4] ("Plaintiff has…not been able to serve any of the Defendants."); Id. at ¶ 5 ("In the interest of providing Defendants with notice and an opportunity to be heard in opposition to the motion for preliminary injunction, Plaintiff respectfully requests

that the Court continue the hearing for two weeks and extend the temporary restraining order during the period."); Id. at ¶ 7 ("To provide Defendants with due process and permit Plaintiff to serve the Defendants, this Court should continue the hearing on the motion for preliminary injunction…"). Though the Court's Order Resetting Deadlines [D.E. 28] acknowledges that counsel has appeared for certain defendants, the docket is noticeably void of any entry by the Plaintiff acknowledging that any defendants have been served with Plaintiff's Motion for Preliminary Injunction. As a result, a preliminary injunction is procedurally improper at this time. See Traffic Tech Inc., 2018 WL 11487392, at *1. (stated a preliminary injunction was not procedurally proper because plaintiff has failed to indicate whether defendants had been served with the motion).

      **c. The preliminary injunction should not be granted because Plaintiff is unlikely to succeed on the merits of its case.**

Despite Plaintiff's Motion for Preliminary Injunction being filed under seal and Plaintiff's Complaint being redacted to the extent that Defendants are uninformed as to Plaintiff's intellectual property rights at issue in this dispute, Defendants understand that Plaintiff's case boils down to two core issues: (1) alleged violation of Plaintiff's trademark rights, and (2) alleged violation of Plaintiff's patent rights.

      **i. Plaintiff is unlikely to succeed on claims relating to violation of Plaintiff's trademark rights.**

Plaintiff's Complaint alleges four various trademark related claims – (i) trademark infringement (15 U.S.C. § 1114), (ii) false designation of origin (15 U.S.C. § 1125(a)), (iii) common law unfair competition, and (iv) common law trademark infringement. To establish a claim for trademark infringement, Plaintiff must establish that Defendant "used the mark in commerce without its consent and that the unauthorized use was likely to deceive, cause confusion,

or result in mistake." Nitro Leisure Products, L.L.C. v. Acushnet Co., 341 F.3d 1356, 1359 (11th Cir. 2003); *see also* Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1216 (11th Cir. 2000) (stating to prevail on a claim of trademark infringement, a plaintiff must show (1) that it had a valid trademark, and (2) that the defendant adopted an identical or similar mark such that consumers were likely to confuse the two). A showing that Plaintiff is unlikely to succeed on the merits of its trademark infringement claims also disperses with the other trademark claims provided in Plaintiff's Complaint. *See, e.g.,* Slip-N-Slide Recs., Inc. v. TVT Recs., LLC, 2005 WL 8155006, at *11 (S.D. Fla. Sept. 30, 2005) (stating in order to prove a claim for false designation of origin, plaintiff must establish that defendant adopted a mark confusingly similar to plaintiff's mark such that there was a likelihood of confusion as to the origin of the goods); *see also* Ross Bicycles, Inc. v. Cycles USA, Inc., 765 F.2d 1502, 1503 (11th Cir. 1985) ("The factors relevant to establishing [false designation of origin] are identical to the factors relevant to establishing a likelihood of confusion with respect to trademark infringement under 15 U.S.C. § 1114."); *see* Monsanto Co. v. Campuzano, 206 F. Supp. 2d 1252, 1267 (S. D. Fla. 2002) (to state a claim for common law unfair competition, plaintiff must allege (1) deceptive or fraudulent conduct of a competitor, and (2) likelihood of consumer confusion).

In addition to Plaintiff's need to show existence of a valid trademark and Defendant's adoption thereof or a similar mark likely to cause consumer confusion, Plaintiff must also show that its use of the mark also predates the defendant's potentially confusing mark. Leigh., 212 F.3d at 1217. Additionally, Section 1057(c)(1) notes that although registration of a mark generally confers a right to priority in the mark, that right to priority does not apply against a party who "has used the mark" prior to the registrant's constructive use. 15 U.S.C. § 1057; 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 16:18.50 (5th ed.) ("Neither application for

nor registration of a mark at the federal level wipes out the prior nonregistered, common law rights of others. The nonregistered rights of a senior user are not erased by the later federal registration of a junior user."); Allard Enters. v. Advanced Programming Res., Inc., 146 F.3d 350, 356 (6th Cir. 1998) ("One of the bedrock principles of trademark law is that trademark ... ownership is not acquired by federal or state registration. Rather, ownership rights flow only from prior appropriation and actual use in the market.") (citation and quotations omitted); Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc., 448 F.3d 1118, 1125 (9th Cir. 2006) ("To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services.") (citation and quotations omitted). In other words, if a senior user developed common law rights by his prior use, the subsequent registration by the junior user cannot be used to mount an infringement claim against the senior user for his ongoing use, because the common law rights are not wiped out by the subsequent use. *See*, Maduka v. Tropical Nats., Ltd., 409 F. Supp. 3d 337, 355 (E.D. Pa. 2019) ("in a priority dispute between a senior common law user and a second-in-time [registrant], the senior common law user will prevail.") (internal citations omitted).

Common-law trademark rights are "appropriated only through actual prior use in commerce." Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001). Ownership rights are created in a mark where it is adopted and used "in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." Id. at 1195. Determining whether the mark was used "in a way sufficiently public" involves an inquiry "into the 'totality of the circumstances' surrounding the prior use of the mark 'to determine whether such an association or notice [was] present.'" Id. "[E]vidence of sales is highly persuasive" under the totality of circumstances

analysis. Id. Additionally, to warrant protection, use of a mark need not have gained wide public recognition, and "even a single use in trade may sustain trademark rights if followed by continuous commercial utilization." Knights Armament Co. v. Optical Sys. Tech., Inc., 636 F. Supp. 2d 1283, 1298 (M.D. Fla. 2009), aff'd, 654 F.3d 1179 (11th Cir. 2011), *citing*, Blue Bell, Inc. v. Farah Mfg. Co., 508 F.2d 1260, 1265 (5th Cir. 1975).

Notwithstanding the fact Defendants are unaware of what marks have been infringed, Defendants' assume Plaintiff's claims relate to the following marks: (i) [SNEAKER SHIELDS logo], and (ii) "SHIELDS." Assuming such is the case, Plaintiff is unlikely to succeed on the merits of its case, because Plaintiff's registrations are invalid as Plaintiff was not the rightful owner of the trademark at the time of filing and Plaintiff committed fraud on the USPTO when claiming so. Specifically, the term "SHIELDS" has been used by Defendants in commerce since before Plaintiff's claimed first use date of May 15, 2020. *See* **Exhibit A** (showing use of "SHIELDS" for shoe shield product, date first available January 18, 2020); **Exhibit B** (showing use of "SHIELD" for shoe shield product, date first available November 11, 2019); **Exhibit C** (showing of "SHIELDS" for shoe shield product, first date available August 7, 2019). Based on the foregoing, the cited marks were generally used in the market prior to Plaintiff's use thereof. The aforementioned exhibits demonstrate that Plaintiff is not the senior user entitled to the necessary trademark rights that would allow Plaintiff to pursue this action. Allard Enterprises, Inc. v. Advanced Programming Res., Inc., 249 F.3d 564, 572 (6th Cir. 2001) (recognizing that "[f]ederal registration of a trademark or service mark cannot create rights and priority over others who have previously used the mark in commerce . . ."). This lack of priority is critical, because, in order "[t]o state viable trademark claims, Plaintiffs must allege that they used the [Mark] in the

relevant market before Defendants actually used the terms." Domond v. Peoplenetwork APS, 2017 WL 5642450 at *4 (S.D. Fla. June 16, 2017); *see also*, Leigh, 212 F.3d at 1216 (To assert either a common law or federal statutory trademark infringement claim, "the plaintiff's use of the mark must predate the defendant's potentially confusing mark.").

Accordingly, Plaintiff is not likely to prevail on the merits of its trademark claim, and should not be warranted the extraordinary relief of a preliminary injunction – especially when taking into account that Plaintiff falsified evidence in order to substantiate its claims to obtain such relief. *See*, Implant Innovations, Inc. v. Debbie LLC, 2007 WL 9701902 (S.D. Fla. May 2, 2007) (denying motion for preliminary injunction where Plaintiff had not demonstrated priority rights in the trademark).

### ii. Plaintiff is unlikely to succeed on claims relating to violation of Plaintiff's patent rights.

Similarly, Plaintiff is not likely to succeed on its patent infringement claims. In the patent context, a "reasonable likelihood of success" requires a showing of (1) validity, and (2) infringement. *See* Ranbaxy Pharm., Inc. v. Apotex, Inc., 350 F.3d 1235, 1239 (Fed.Cir.2003) (stating to establish likelihood of success on the merits, the moving party must show that in – light of the presumptions and burden that will inhere at trial on the merits – (i) it will likely prove infringement, and (ii) its infringement claim will likely withstand challenges to the validity and enforceability of its patent). Though an issued patent is presumed valid, this presumption "does not relieve a patentee who moves for preliminary injunction from carrying the normal burden of demonstrating [likelihood of success,] even when the issue concerns the patent's validity." Helifix, Ltd. v. Blok–Lok, Ltd., 208 F.3d 1339, 1351 (Fed.Cir.2000). If the alleged infringer raises a "substantial question" concerning validity (i.e. the assertion of a defense that the patentee cannot show "lacks substantial merit"), the Court is precluded from issuing a preliminary injunction. Id.

In order to raise a "substantial question" on validity for injunctive purposes, the alleged infringer is not required to demonstrate to a legal certainty that it would ultimately win at trial. In re Terazosin Hydrochloride Antitrust Litig., 352 F. Supp. 2d 1279, 1304 (S.D. Fla. 2005). "Validity questions during preliminary injunction proceedings can be successful, that is, they may raise substantial questions of invalidity, on evidence that would not suffice to support a judgment of invalidity at trial….Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial." Amazon.com, Inc., 239 F.3d at 1358–59; see also Fusilamp, LLC v. Littelfuse, Inc., 2010 WL 3446913, at *3 (S.D. Fla. August 31, 2010) (stating an alleged infringer must only establish the existence of a substantial question as to the invalidity of the patent to meet its burden in defending against a motion for preliminary injunctive relief, and this burden is merely to show "vulnerability" of the patent at the preliminary injunction stage – not to establish the patent's "invalidity.").

Once the alleged infringer establishes the existence of a substantial question as to the validity of the patent, the burden shifts to the patentee to show that it will likely succeed at trial. Id. In doing so, the patentee must show that the alleged infringer's defense lacks substantial merit. New England Braiding Co., Inc. v. A.W. Chesterton Co., 970 F.2d 878, 882 (Fed.Cir.1992). *See also* Genentech, Inc. v. Novo Nordisk A/S, 108 F.3d 1361, 1364 (Fed.Cir.1997) ("In other words, if [the alleged infringer] raises a 'substantial question' concerning validity, enforceability, or infringement (i.e., asserts a defense that [the patentee] cannot show 'lacks substantial merit') the preliminary injunction should not issue.")

Again assuming the nature of Plaintiff's patent rights at issue, Defendants are able to raise substantial questions as to the validity of Plaintiff's patent. Firstly, Plaintiff's alleged patent has a priority date of July 30, 2008, as it is a divisional patent of a much earlier patent. See **Exhibit D.**

Design patents have a term of only 14-15 years, so the patent has expired now. As such, Plaintiff's Motion for Preliminary Injunction is objectionable simply because there is no irreparable harm in allowing Defendants to continue selling its products because Plaintiff's patent has expired.

Furthermore, Plaintiff is estopped from claiming patent infringement as the USPTO cited Defendants' supplier's patents (*see* **Exhibit E-1** and **Exhibit E-2**) – on which Defendants' products are based – in Plaintiff's patent application; thus, showing the USPTO has already determined that the patents (and its corresponding products) are not substantially similar.

Plaintiff's unlikeliness to succeed on its patent infringement claim is further exemplified due to the plain dissimilarity over the ornamental features of the design. Plaintiff's is a divisional patent from a 2008 utility patent (*see* **Exhibit D**). By virtue of the utility patent application, the general shape of the item is dictated by the utilitarian purpose of the item and isn't protected by the design patent. A review of the purely ornamental features of Plaintiff's design patent and Defendants' product shows no similarities. Specifically, the edges are clearly curved differently and the holes are lined up and laid out very differently (*see* below, Plaintiff's Patent to the right, Defendants' products to the left):



Additionally, under 35 U.S.C. § 102(b), a patent is invalid if the invention it claims was offered for sale or sold in the United States more than one year prior to the filing date of the patent application. *See* In re Terazosin Hydrochloride Antitrust Litig., 352 F. Supp. at 1304; *see also* Vanmoor v. Wal-Mart Stores, Inc., 201 F.3d 1363, 1366 (Fed. Cir. 2000) (affirming invalidity of a patent because the accused product was placed for sale prior to the critical date of the patent). The "on-sale bar" does not require sustained commercial activity, advertising, or displays; rather, a single sale or a single offer to sell is sufficient to trigger the statutory bar. *See* In re Caveney, 761 F.2d 671, 676 (Fed.Cir.1985). Furthermore, the sale or offer of sale does not need to be made by the inventor or by the patent owner. Id. A sale or offer for sale by a third party is just as effective a statutory bar to validity as a sale or offer by the inventor. Id.; *see also* J.A. LaPorte, Inc. v. Norfolk Dredging Co., 787 F.2d 1577 (Fed.Cir.1986) (stating the "bar is not limited to sales by the inventor or one under his control, but may result from the activities of a third party.")

Plaintiff's patent (as assumed by Defendants) was filed for on May 20, 2022. Therefore, the critical date for purpose of the "on-sale bar" is May 20, 2020. As seen from Exhibits A-C, Defendants have sold the products at issue since at least 2019. Defendant's sales raise a substantial question as to the validity of Plaintiff's Patent. *See e.g.* In re Terazosin Hydrochloride Antitrust Litig., 352 F. Supp. at 1304 (stating the existence of at least three sales prior to the patentee's critical date resulted in the application of the "on-sale bar."); *see also* In re Caveney, 761 F.2d at 676 (stating evidence of a single sale is sufficient to trigger the "on sale" bar.").

Based on the existence of Defendant's sales predating the critical date of Plaintiff's patent, a substantial question has been asserted regarding the validity thereof. Furthermore, in addition to the substantial questions raised regarding whether Plaintiff's patent should actually be deemed terminated and/or estopped from asserting infringement based upon the USPTO's citations to

Defendants' supplier's patents, as Plaintiff's patent is likely to be declared invalid, it follows that Plaintiff is not likely to succeed on the merits of its claims raised in Plaintiff's Complaint. *See e.g.*, Pride Family Brands, Inc. v. Carl's Patio, Inc., 992 F. Supp. 2d 1214, 1223 (S.D. Fla. 2014) (granting summary judgment and declaring a patent invalid based on application of the on-sale bar).

        d. **Plaintiff is not entitled to an asset restraint. Alternatively, at a minimum, the asset restraint should be limited to the amount that may possibly be recovered as profits through and equitable accounting.**

This Court should limit the asset restraint to the amount that may possibly be recovered as profits through an equitable accounting. The Supreme Court has held that district courts generally lack the authority "to issue a preliminary injunction preventing [a defendant] from disposing of [its] assets pending adjudication" of a plaintiff's claim for money damages. Grupo Mexicano de Dessarrolo v. Alliance Bond Fund, 527 U.S. 308, 333 (1999). Furthermore, "the general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." Charter Sch. Cap., Inc. v. N.E.W. Generation Preparatory High Sch. of Performing Arts, Inc., 2015 WL 11201180 at *3 n. 3 (S.D. Fla. June 2, 2015) (internal citations omitted). Prejudgment asset restraints, therefore "should not include…financial accounts which bear no nexus to the alleged improper activities." F.T.C. v. Washington Data Res., 2011 WL 3566612 at *4 (M.D. Fla. July 15, 2011), *report and recommendation adopted*, 2011 WL 3566208 (M.D. Fla. Aug. 12, 2011); U.S. Commodity Futures Trading Comm'n v. E-Metal Merchants, Inc., 2006 WL 8432005 (S.D. Fla. Jan. 9, 2006) ("any funds not reasonably related to the ultimate relief requested by Plaintiff should be released."); *see also*, Animale Grp. Inc. v. Sunny's Perfume Inc., 256 F. App'x 707, 708 (5th Cir. 2007), *quoting*, Deckert v. Independence Shares Corp., 311 U.S. 282, 289-91 (1940)

(noting that Prejudgment asset restraints are limited to cases seeking equitable relief, where they are narrowly drawn "to sequester only those funds necessary to satisfy the potential judgment.").

Applying these principles, any prejudgment asset restraint should be limited to amounts that the plaintiff is reasonably likely to recover pursuant to an equitable accounting of profits in this case. 15 U.S.C. § 1117(a); Cengage Learning, Inc. v. Doe 1, 2018 WL 2244461, at *3 (S.D.N.Y. Jan. 17, 2018); Lions Gate Films Inc. v. Does, 2014 WL 3895240, at *7 (C.D. Cal. Aug. 8, 2014); Absolute Activist Value Master Fund Ltd. v. Devine, 2016 WL 1572388 at *5 (M.D. Fla. Apr. 19, 2016) ("The asset freeze, however, may not preserve any amount of assets in excess of the equitable relief sought."); Chanel, Inc. v. 83bab.com, 2014 WL 11881008 (S.D. Fla. June 19, 2014), *report and recommendation adopted*, 2014 WL 11881007 (S.D. Fla. July 11, 2014) (refusing to extend asset freeze to Defendants accounts where there was an insufficient showing that the "accounts also contain illegal profits from the sale of the [counterfeit] goods."); *see also*, Deckers Outdoor Corp. v. P'ships & Unincorporated Assocs. Identified on Schedule A, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013) ("[W]here equitable relief is sought, the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief.  For example, where (as here) a litigant seeks the equitable remedy of an accounting of profits, then if the amount of the profits is known, then the asset freeze should apply on to that specific amount, and no more... In other words, the asset-restraint order must be limited only to the extent that is needed to secure the equitable remedy; the scope of the exception (to the general ban on prejudgment restraint) is limited by the scope of the exception's rationale."); Levi Strauss & Co., 51 F.3d at 987 (concluding that the "district court had the authority to freeze those assets which could have been used to satisfy an equitable award of profits" in a Lanham Act case); McCarthy on Trademarks and Unfair Competition § 30:40 (4th ed.)  (the

purpose of freezing assets is to preserve "security for plaintiff's future recovery on an accounting of the counterfeiter's profits."); F.T.C. v. Bishop, 425 F. App'x 796, 798 (11th Cir. 2011) ("The district court abused its discretion by imposing too broad of an asset freeze without making any reasonable approximation of Defendant-Appellant's ill-gotten gains.").

Based on the foregoing, there is no basis for including restraining amounts unrelated to the actions alleged in Plaintiff's Complaint. At this time, Defendants have been unable to conduct a diligent search to ascertain what profit (if any) Defendants have obtained from its alleged infringing activities. In any event, case precedent mandates that no such restraint should be required. In exercising its discretion to modify[5] an asset restraint due to being overbroad, the court in *Awareness Ave. Jewelry LLC* stated the following:

> **[It does not appear] the Court that an asset freeze is required to ensure the availability of permanent equitable relief against the moving Defendants. The amount of funds in their accounts, the minimal profits they have obtained from the alleged infringement, and the fact that they have appeared by counsel in this lawsuit to respond to the complaint, all suggest that they will have funds to pay a judgment for disgorgement of profits if one is ultimately entered.**

Here, Defendants have appeared for the purpose of defending against Plaintiff's claims (as shown by the arguments presented above). Furthermore, Defendants are able to provide written confirmation to the Court that the Defendants will have funds to pay a disgorgement of profits if one is ultimately entered. Accordingly, there is no need for the Court to impose any asset restraint against Defendants. Alternatively, should the Court deem restraint required, the amount of any asset restraint on the Defendants' accounts should be reduced to, at most, the profit from the Defendants' sales of allegedly-infringing products.

---

[5] In *Awareness Ave. Jewelry LLC*, the Court exercised its discretion to modify the preliminary injunctive relief previously granted to the extent of eliminating the asset restraint. 2023 WL 3568387, at *2.

### III.  Conclusion

For the reasons set forth above, Defendants request that the Court deny Plaintiff's Motion for Preliminary Injunction, and grant such further relief as the Court deems just and appropriate.

Dated:    December 20, 2023

>Respectfully submitted,
>
>/s/Darren Heitner
>HEITNER LEGAL, P.L.L.C.
>215 Hendricks Isle
>Fort Lauderdale, FL 33301
>darren@heitnerlegal.com
>Ph.    (954) 558-6999
>*Attorney for Defendant*

### CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2023, a true and correct copy of the foregoing was electronically filed using CM/ECF, which serves electronic notice on all counsel of record and registered CM/ECF users.

By: _____
DARREN A. HEITNER

**Schedule A**

| | |
|---|---|
| 238 Aolantai - AUQWPJ3QAPGFD, aolantai1@outlook.com<br>495 Aolantai - 101082659, aolantai1@outlook.com<br>N/A Zudun - A1UBO4JE5QIDR2, zudunmaoyi@outlook.com<br>218 YoGus Electric - A9MLKAKO9K639 (patent only) | Group 1 |
| 424 VEER HOME & LIVING 2834183249<br>180 GOOUDO-US A2XBFH4UCTRKZM<br>230 kemirui ANFCPT2T775IB<br>158 Yzg A26YSAKOMKFIM5<br>193 VoMii Health Direct US A3992N65F7CFV0<br>178 Vsonker US A2TPU0TF6RZLCS<br>139 Shayee Zone A1FCFD0HNMQFY7<br>211 Margo D A3VUNRK0TXR1PM<br>219 rorpove A9MNKFAK45E26<br>428 Companion Shoes 5808615852<br>201 DSWTOPUS A3HN9PB7O63Y58<br>139 Shayee Zone A1FCFD0HNMQFY7<br>211 Margo D A3VUNRK0TXR1PM<br>N/A GodbLA1YBWV3F72ZC8I | Group 2 |
| 233 Wenanbeino AP0XLF8SQSXGG<br>196 Shakeyo A3EPDNLGP3TT17 | Group 3 |